IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2024 Session

## LINDA R . KERLEY v. GEORGE OLIN KERLEY

**Appeal from the Circuit Court for Bledsoe County**
**No. 18-CV-5671    Thomas W. Graham, Judge**

_____

### No. E2022-01206-COA-R3-CV

_____

This is an appeal from a final decree of divorce in which the trial court determined that the assets accumulated by the parties during their fifty-eight-year marriage were all marital property and were worth approximately $2,000,000.00 in total.  Following a hearing wherein the parties testified regarding the values of the individual assets, the trial court entered a final decree of divorce,  assigning values and dividing the marital assets into two tables, awarding approximately forty-seven percent of the assets to the wife and approximately fifty-three percent of the assets to the husband.  The trial court also awarded to the wife "transitional alimony" of $1,000.00 per month for five years as well as her reasonable attorney's fees.  The husband has appealed from the final decree, arguing that (1) the trial court erred in the distribution of assets because it did not make sufficient findings in the record or allocate proper weight to the factors set forth in Tennessee Code Annotated § 36-4-121(c) and (2) the trial court erred in granting temporary alimony to the wife based upon her financial need.  In her reply brief, the wife seeks an award of attorney's fees on appeal.  Based on our review, we determine that the final decree contains insufficient findings of fact regarding the distribution of marital assets and the award of alimony because the trial court failed to delineate its analysis of the required statutory factors as to either award.  Accordingly, we vacate those portions of the trial court's final decree and remand for further findings of fact and conclusions of law.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

Howard L. Upchurch, Pikeville, Tennessee, for the appellant, George Olin Kerley.

Jennifer Austin Mitchell, Dunlap, Tennessee, for the appellee, Linda R. Kerley.

**OPINION**

**I. Factual and Procedural Background**

The parties, George Olin Kerley ("Husband") and Linda R. Kerley ("Wife"), were married from September 8, 1962, until August 18, 2020, when they were divorced by final decree of divorce from the Bledsoe County Circuit Court ("trial court"). At the time of trial, Husband and Wife were ages seventy-seven and seventy-five years old, respectively. Throughout their fifty-eight-year marriage, Husband worked mainly as a building contractor and farmer while Wife was employed at a factory and raised the parties' three children. Over the years, the parties acquired numerous properties in Bledsoe County, both residential and undeveloped, which they either occupied, rented for profit, or used for farmland and various enterprises. The residential properties included the "Litton House" property, located at 4332 Lowes Gap Road, upon which was located a residence, country store, and two barns; the "Brick House" property, located at 4294 Lowes Gap Road; and the marital home, located at 4336 Lowes Gap Road, where the couple were living at the time of their separation and divorce. In addition to the improved real property, the parties owned several parcels of undeveloped real property, approximately seventy head of cattle, retirement and bank accounts, and various vehicles, construction machinery, and other personal property. The value of the parties' collective assets totaled approximately $2,000,000.00.

The instant action began on August 10, 2018, when Wife filed a complaint for divorce against Husband, alleging infidelity and seeking temporary spousal support and temporary possession of the marital home. In response, Husband filed a motion seeking exclusive possession of the "basement area of the marital home" as well as relief from Wife's requests for temporary spousal support and sole possession of the marital home. On December 18, 2018, the trial court entered an order determining that Husband was not responsible for paying temporary spousal support during the pendency of the divorce but that Husband would "continue to be responsible for the regular monthly bills and obligations, as paid by [Husband] prior to the parties' separation[.]" The order also divided possession of the marital residence such that Wife would occupy the upstairs portion while Husband would occupy the basement area of the home until he could find another place to live.

On May 13, 2019, Husband filed a "Petition for Contempt and Injunctive Relief" against Wife, alleging that Wife had improperly transferred $100,000.00 from the parties' joint business account in violation of the temporary injunctions imposed by the trial court pursuant to Tennessee Code Annotated § 36-4-106(d). On June 13, 2019, Wife filed an "Answer and Counter-Petition for Contempt," claiming that Husband had dissipated $102,000.00 from the same bank account and that Husband had further violated the injunction by selling the parties' cattle, dissipating proceeds from the parties' rental

property, terminating and re-routing Wife's electricity and phone account, and destroying the heating unit at the marital home.

On December 16, 2019, the trial court conducted a hearing relative to the cross-motions for contempt and various other motions that had been filed by Wife. The resultant findings were memorialized in an order dated March 2, 2020. The trial court expressly declined to rule on Husband's motion for contempt against Wife regarding the $100,000.00 withdrawn from the joint bank account but instead directed the parties to exchange tax returns and bank records through respective counsel. The trial court further directed the parties to refrain from renting the Litton House until they could agree on a tenant and directed Wife to deliver to Husband his clothing and personal effects from the marital home. The trial court reserved all remaining issues pending the final hearing.

On July 30, 2020, the trial court conducted a final divorce trial, during which it heard testimony from the parties and their appraisers regarding the values and proposed distributions of the assets. On August 18, 2020, the trial court entered the final decree of divorce. In the decree, the trial court classified the parties' accumulated assets as marital property. The judgment included three paragraphs of findings of fact and conclusions of law relative to the trial court's equitable distribution of the marital property and its award of alimony to Wife. The trial court then divided the marital property, listing the assets in two tables with associated values for each. The court awarded assets to Wife totaling $850,882.78 and to Husband valued at $955,151.50. The trial court also determined that Husband would "service" the outstanding $231,000.00 debt associated with a tract of land referred to as the "Ponderosa LLC Highway 127 South" property ("Ponderosa Property") until that real estate could be sold and the proceeds divided. Upon completing the asset distributions, the trial court awarded to Wife "transitional alimony" in the amount of $1,000.00 per month for five years and her reasonable attorney's fees.

Husband timely appealed the divorce decree. However, this Court dismissed the appeal for lack of subject matter jurisdiction because no final order had been entered by the trial court resolving the pending cross motions for contempt and Wife's pending motion for attorney's fees. *See Kerley v. Kerley*, No. E2020-01137-COA-R3-CV, 2021 WL 2767270, at *1 (Tenn. Ct. App. July 1, 2021). Upon the dismissal of the first appeal, Husband sought a final order from the trial court. Following a hearing, the trial court ruled on the pending motions for contempt and for attorney's fees and subsequently entered an order on August 6, 2021, stating that all issues between the parties had been resolved.

However, due to a clerical error, the August 6, 2021 order was apparently never entered into the trial court record. On August 31, 2022, upon motion by Husband, the trial court entered an order granting Husband relief from the August 6, 2021 final order pursuant to Tennessee Rules of Civil Procedure 60.01 and 60.02. The trial court concomitantly entered a second final order, which reflected verbatim the contents of the August 6, 2021 final order. Husband timely appealed from the second final order on September 2, 2022.

3

## II. Issues Presented

Husband raises the following issues on appeal for this Court's review, which we have restated slightly:

1. Whether the trial court erred in its distribution of the parties' marital property by failing to allocate proper weight to the factors set forth in Tennessee Code Annotated § 36-4-121(c) and by failing to make sufficient findings regarding those factors.

2. Whether the trial court erred by granting transitional alimony[1] to Wife when Wife was not in financial need of alimony.

Wife raises the following additional issue:

3. Whether Wife should be awarded her attorney's fees on appeal.

## III. Standard of Review

In a case involving the proper distribution of assets incident to a divorce, our Supreme Court has explained the applicable standard of appellate review as follows:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and

---

[1] In the statement of the issues section of his appellate brief, Husband refers to the contested spousal support award as "temporary alimony," but refers to the award as "transitional alimony" throughout the sub-heading and argument section of the brief. We note that "temporary alimony" is a term that generally refers to spousal support awarded to a party while trial is pending. *See, e.g.*, *Stratienko v. Stratienko*, 529 S.W.3d 389, 396, 401-404 (Tenn. Ct. App. 2017) (discussing an award of spousal support to the wife pending trial as "temporary alimony" and distinguishing it from other types of spousal support awarded post-divorce). Here, Husband appeals from the trial court's final decree, in which the trial court awarded to Wife "transitional alimony" for five years *post*-divorce. As stated above, Husband refers to and analyzes the contested spousal support award as "transitional alimony" throughout the argument section of his brief. Moreover, we do not find any award of temporary spousal support in the record. For this reason, we interpret Husband's second issue as a challenge to the trial court's award of "transitional alimony" to Wife and not to any award of "temporary alimony," despite Husband's use of that term in the statement of the issues section. To the extent that Husband did intend to appeal an award of "temporary alimony" to Wife, Husband has waived that argument for failure to address it in the argument section of his brief. *See* Tenn. R. App. P. 27(a)(7) (The brief of the appellant shall contain "an argument . . . setting forth [] the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief[.]").

4

procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007); *see Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence."). The valuation of a marital asset is a question of fact. *Kinard v. Kinard,* 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). "All marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property." Tenn. Code Ann. § 36-4-121(b)(2)(A) (West July 1, 2017, to March 30, 2022).

Additionally, our Supreme Court has explained the applicable standard of review in cases involving issues of spousal support, or alimony, as follows:

[A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew* [*v. Burlew*], 40 S.W.3d [465,] 470 [(Tenn. 2004)]; *Robertson v. Robertson*, 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous

assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (internal footnotes omitted).

## IV. Marital Property Division

Husband does not dispute the trial court's classification of the parties' accumulated assets as "marital property." Instead, he advances the position that the trial court did not include sufficient findings of fact and did not properly consider the factors set forth in Tennessee Code Annotated § 36-4-121(c) when fashioning its equitable distribution of the parties' property. Husband relies on the statutory factors and the provision of Tennessee Rule of Civil Procedure 52.01 that requires trial courts "to make specific findings of fact and conclusions of law" when dividing marital assets. Husband especially asserts that the trial court failed to consider and weigh the "duration of the marriage," the "contribution of each party to the preservation and dissipation of the marital property," the "importance of the businesses and agriculture," and the "functional use of the 'Litton House' property and the land."

"After classification of the parties' property as either marital or separate, the trial court is charged with equitably dividing, distributing, or assigning the marital property in 'proportions as the court deems just.'" *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *11 (Tenn. Ct. App. May 13, 2003) (quoting Tenn. Code Ann. § 36-4-121(a)(1)). "Trial Courts have wide latitude in fashioning an equitable division of marital property. Their decisions must be guided by the factors in Tenn. Code Ann. § 36-4-121(c)[.]" *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994) (internal citations omitted); *see Swafford v. Swafford*, No. E2017-00095-COA-R3-CV, 2018 WL 1410900, at *2 (Tenn. Ct. App. Mar. 21, 2018) ("Tenn. Code Ann. § 36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property[.]") (quoting *McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140, at *3 (Tenn. Ct. App. Apr. 16, 2010)).

At the time Wife filed for divorce, the version of Tennessee Code Annotated § 36-4-121(c) (West July 1, 2017, to March 30, 2022) that was in effect provided:

(c)    In making equitable division of marital property, the court <u>shall</u> consider all relevant factors including:

    (1)    The duration of the marriage;

    (2)    The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

    (3)    The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

    (4)    The relative ability of each party for future acquisitions of capital assets and income;

    (5)(A)    The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

    (B)    For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed;

    (6)    The value of the separate property of each party;

    (7)    The estate of each party at the time of the marriage;

    (8)    The economic circumstances of each party at the time the division of property is to become effective;

7

(9)   The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10)  In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable.  Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence;

(11)  The amount of social security benefits available to each spouse; and

(12)  Such other factors as are necessary to consider the equities between the parties.

(Emphasis added.)

Our review of the trial court's final decree reveals that the court did not reference or make specific findings with respect to the factors set forth in § 36-4-121(c).  Therefore, as Husband correctly contends, the trial court's distribution of the parties' marital property did not comport with Tennessee Rule of Civil Procedure 52.01.  Rule 52.01 states, in pertinent part:

In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment.

As this Court has explained regarding the requirements set forth in Rule 52.01:

"Simply stating the trial court's decision, without more, does not fulfill this mandate."  *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012).  "[T]he General Assembly's decision to require findings of fact and conclusions of law is 'not a mere technicality.'"  *Hardin* [*v. Hardin*], [No. W2012-00273-COA-R3-CV,] 2012 WL 6727533, at *3 [(Tenn. Ct. App. Dec. 27, 2012)] (quoting *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009)).  Such findings and conclusions "facilitate appellate review by affording a reviewing court a clear understanding of the basis of a

8

trial court's decision." *Lovlace v. Copley*, 418 S.W.3d 1, 34 (Tenn. 2013). In the absence of sufficient findings and conclusions, "'this court is left to wonder on what basis the court reached its ultimate decision.'" *In re K.H.*, 2009 WL 1362314, at *8 (quoting *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004)).

> There is no bright-line test by which to assess the sufficiency of factual findings, but "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue."

*Lovlace*, 418 S.W.3d at 35 (quoting 9C Federal Practice & Procedure § 2579, at 328).

*Trezevant v. Trezevant*, 568 S.W.3d 595, 622 (Tenn. Ct. App. 2018).

Here, because the trial court did not include an analysis of the relevant factors, we cannot determine whether the trial court applied the correct legal standard in distributing the parties' marital assets. Instead we are "left to wonder" on what basis the trial court reached its ultimate decision. *See in re K.H.,* 2009 WL 1362314, at *8. As related to an equitable division of the parties' marital property, the trial court determined the following:

> The parties have no minor children and have accumulated substantial marital property including two (2) primary residences as well as two (2) rental homes and substantial additional acreage, personal property, bank accounts, and retirement accounts. The total value of the marital property is approximately two (2) million dollars.
>
> * * *
>
> Both parties worked to accumulate their marital property. The husband worked as a building contractor and continues to work full time even at his current age of 77 years. The wife worked for more than thirty (30) years as a factory worker while raising the parties' three adult children.

(Paragraph numbering omitted.) The court then assigned specific values to the assets and divided the assets into two separate tables: one for Wife and one for Husband.

From these minimal findings of fact, we are unable to determine the steps by which the trial court reached its conclusions regarding how to distribute the marital assets or whether the overall distribution was equitable. *See Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013); *Swafford*, 2018 WL 1410900, at *6. For these reasons, we vacate the trial

9

court's division of the parties' accumulated marital assets and remand to the trial court with instructions to amend its final order to include written, specific findings of fact and conclusions of law in accordance with § 36-4-121(c).

## V. Award of Transitional Alimony

Husband argues that the trial court erred when awarding "transitional alimony" to Wife because the court did not consider or mention the relevant statutory factors for determining alimony set forth in Tennessee Code Annotated § 36-5-121(i). To support this contention, Husband avers that although Wife's monthly "expenses are $688 over her income," Wife does not have a need for transitional alimony because Wife received in the divorce "substantial" marital assets totaling "$850,882.78." Husband further avers that although Husband "netted $2,049 a month" at the time of the divorce, Husband "is now 80 years old," and his ability to withstand the demanding toll of the construction business from which he earns his money will "likely not last the rest of his life." Due to his advanced age and the physical nature of his construction work, Husband posits that his ability to pay alimony will "diminish over time." Finally, Husband contends that Wife's financial need for alimony is "unsubstantiated." Wife responds that both her need and Husband's ability to pay were established through evidence presented during trial, particularly regarding the disparity between the parties' monthly incomes and expenses. Wife urges that due to this disparity, which Wife asserts proved she was at a financial disadvantage, the trial court's award of transitional alimony was appropriate.

"Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce[.]" Tenn. Code Ann. § 36-5-121(g)(1) (West April 25, 2011, to March 30, 2022). Regarding the purpose of an award of transitional alimony, the Tennessee Supreme Court has explained:

> The fourth category of support, transitional alimony, is appropriate when a court finds that rehabilitation is not required but that the economically disadvantaged spouse needs financial assistance in adjusting to the economic consequences of the divorce. Tenn. Code Ann. § 36-5-121(d)(4), (g)(1); *Riggs*[v. Riggs], 250 S.W.3d [453,] 456 n.5 [(Tenn. Ct. App. 2007)]. Simply put, this type of alimony "aid[s] the person in the transition to the status of a single person." *Mills v. Mills*, No. M2009-02474-COA-R3-CV, 2010 WL 3059170, at *5 (Tenn. Ct. App. Aug. 4, 2010); *see also Montgomery v. Silberman*, No. M2009-00853-COA-R3-CV, 2009 WL 4113669, at *2 (Tenn. Ct. App. Nov. 24, 2009) (affirming trial court's award of transitional alimony to wife "to bridge the gap, so to speak, between her married life and single life"); *Engesser v. Engesser*, 42 So. 3d 249, 251 (Fla. Dist. Ct. App. 2010) (en banc) (describing transitional alimony as "[b]ridge-the-gap alimony" designed to "smooth the transition of a spouse from married to

10

single life"). In contrast to rehabilitative alimony, which is designed to increase an economically disadvantaged spouse's *capacity* for self-sufficiency, transitional alimony is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income. As such, the transitional alimony is a form of short-term support.

*Gonsewski*, 350 S.W.3d at 109. At the time Wife filed for divorce, the version of Tennessee Code Annotated § 36-5-121(i) (West April 25, 2011, to March 30, 2022) then in effect provided:

In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

> (3) The duration of the marriage;

> (4) The age and mental condition of each party;

> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

> (7) The separate assets of each party, both real and personal, tangible and intangible;

11

(8)     The provisions made with regard to the marital property, as defined in § 36-4-121;

(9)     The standard of living of the parties established during the marriage;

(10)    The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11)    The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12)    Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

"All relevant statutory factors are to be considered by the trial court, but the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." *Williams v. Williams*, No. W2018-00800-COA-R3-CV, 2019 WL 1375218, at *3 (Tenn. Ct. App. Mar. 26, 2019) (quoting *Gonsewski*, 350 S.W.3d at 110) (internal quotation marks omitted).

After dividing the parties' assets, the trial court in this case made the following determinations relative to alimony:

In consideration of the comparative incomes of the parties, the Court finds [Wife's] request for alimony is appropriate.

* * *

The Court awards transitional alimony to the Wife in the amount of One Thousand Dollars ($1,000.00) per month for a period of five (5) years.

(Paragraph numbering omitted.)

Regarding our review of a trial court's award of alimony, this Court has previously explained:

The Tennessee Supreme Court has consistently recognized that trial courts in Tennessee have broad discretion to determine whether spousal support is

12

needed and, if so, to determine the nature, amount, and duration of the award. *See, e.g.*, *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011); *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000). Because a trial court's "decision regarding spousal support is factually driven and involves the careful balancing of many factors," *Gonsewski*, 350 S.W.3d at 105 (footnote omitted), the role of an appellate court is not to second guess the trial court or to substitute its judgment for that of the trial court, but to determine whether the trial court abused its discretion in awarding, or refusing to award, spousal support. *Id*.; *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999) ("If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative.").

*Horine v. Horine*, No. E2013-02415-COA-R3-CV, 2014 WL 6612557, at *5 (Tenn. Ct. App. Nov. 24, 2014). However, as the *Horine* Court further clarified, Tennessee Rule of Civil Procedure 52.01 requires a trial court to make specific findings of fact and conclusions of law. *See id.* at *7. The requirement for trial courts to include findings of fact "is not a mere technicality" but instead "serves the important purpose of 'facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id.* (citation and internal quotation marks omitted). "Without findings of fact from a trial court, we have nothing upon which to presume correctness." *Norris v. Norris*, No. E2014-02353-COA-R3-CV, 2015 WL 9946262, at *2 (Tenn. Ct. App. Aug. 24, 2015). If the trial court fails to include sufficient findings of fact and conclusions of law, "its decision is normally vacated and the cause remanded for such findings and conclusions; however, the appellate court may, in some circumstances, 'soldier on' in the absence of them." *In re S.J.*, 387 S.W.3d 576, 594 n.9 (Tenn. Ct. App. 2012); *Norris*, 2015 WL 9946262, at *2-3.

In the case at bar, the trial court did not make sufficient findings regarding the applicable statutory factors. Although the court did mention the "comparative income of the parties," the court did not include specific findings of fact relative to the parties' incomes and did not state how those incomes affected Husband's ability to pay alimony or Wife's financial need. *See Williams*, 2019 WL 1375218, at *3. Furthermore, there is nothing in the divorce decree that demonstrates the trial court's analysis or reasoning in determining the nature, amount, length of term, or manner in which the spousal support award should be paid. *See* Tenn. Code Ann. § 36-5-121(i). The absence of sufficient findings and conclusions leaves this Court unable to review the alimony determination and hinders our ability to presume the correctness of the decision. *See Norris*, 2015 WL 9946262, at *2; *Horine*, 2014 WL 6612557, at *7. Notably, even if the trial court had properly made findings and analyzed the statutory factors, this Court would still need to vacate the alimony award by reason of the unsettled marital property distribution. *See Trezevant*, 568 S.W.3d 595 at 624 (vacating award of alimony due to an unsettled marital

13

property distribution). Accordingly, we vacate the trial court's award of transitional alimony to Wife and remand the issue of spousal support to the trial court for sufficient findings of fact and conclusions of law and for consideration of the relevant statutory factors.

## VI. Attorney's Fees

Wife has requested an award of attorney's fees on appeal, claiming that Husband's "continued, costly, legal battle to remove Wife from her home is inequitable and unfair." However, Husband has been successful in arguing on appeal that the trial court erred by failing to weigh the relevant statutory factors in its division of marital assets and its alimony award. Accordingly, we determine that this is not an appropriate case for an award of attorney's fees on appeal. *See Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723 at *13 (Tenn. Ct. App. Sept. 18, 2007) ("[I]t is in the sole discretion of this court whether to award attorney's fees on appeal.").

## VII. Conclusion

For the foregoing reasons, we vacate the trial court's distribution of the parties' assets and the award of transitional alimony to Wife. We remand those matters to the trial court with instructions to render sufficient factual findings and to properly consider the relevant statutory factors, as set forth in this Opinion, for both the equitable division of assets and the spousal support award. Upon remand, the trial court may, in its discretion, determine an appropriate equitable division of property and transitional alimony award and is not bound by the division and award amounts in the final decree of divorce. Regarding the trial court's other determinations in the final decree—the assignment of values to the parties' real property and other assets, the grant of an absolute divorce between the parties, and the award of reasonable attorney's fees to Wife—we do not reach those issues in this Opinion because they were not presented as issues on appeal and are therefore waived.[2] Costs on appeal are taxed one-half to the appellant, George Olin Kerley, and one-half to the appellee, Linda R. Kerley.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE

---

[2] We note that the trial court's unsettled property division could in some instances result in vacatur of the attorney's fees award to Wife. *See, e.g.*, *Trezevant*, 568 S.W.3d at 624. However, Husband did not raise the trial court's award of attorney's fees as an issue on appeal and has therefore waived that argument. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."); *Watson v. Watson*, 309 S.W.3d 483, 497 (Tenn. Ct. App. 2009) ("The appellate court may treat issues that are not raised on appeal as being waived.") (citations omitted).

14